Catherine H. Cocker, Respondent, *v.* John Cocker, Appellant.

### June 10, 1876.

1. A and B were co-executors of C. Money came into the hands of A, which he temporarily committed to B, taking his note, by which B promised to pay the amount to A, with interest. *Held*, that in a suit on the note it was no defense that the money belonged to the estate of C.

2. If interest be paid within ten years on a note which had been due for more than that period, the bar of the statute of limitations is thereby avoided.

Appeal from St. Louis Circuit Court.

*Affirmed.*

*Dryden & Dryden*, for respondent, cited: Edmons *et al. v.* Crenshaw, 14 Pet. 166; Lawrence *v.* Lawrence, 3 Barb. Ch. 71; Abila *v.* Bennett, 33 Cal. 667; Hope *v.* Jones, 24 Cal. 92; Daly's Estate, 1 Tuck. Sur. 95.

*Seymour Voullaire* and *Sternberg & Morris*, for appellant, cited: Carr *v.* Dings, 58 Mo. 400.

Gantt, P. J., delivered the opinion of the court.

This action was commenced to the December term, 1871, and, on October 26, 1872, an amended petition was filed stating the making by defendant to the plaintiff, on December 31, 1860, of a note for $655; that the interest thereon was paid up to February 17, 1865, and that the principal, with interest from that date at the rate of 10 per cent. per annum, was due.

The answer denied indebtedness; denied that defendant had paid interest up to February 17, 1865; denied all payments on said note; alleged that in 1858 Abraham Cocker died at Kankakee, Illinois, leaving a will by which he devised and bequeathed to the plaintiff (his wife) and to the defendant (his son) all his real and personal estate upon trust that they would, immediately after his decease, convert the same into money, pay his debts, and apply the residue as therein directed; that he gave to plaintiff one-

third of all his estate, real and personal, during her natural life, and, at her decease, such share should belong to her unborn child;  *  *  *  and, should all the children of said plaintiff by testator die, then one-sixth part of said property should descend to his granddaughter, Amelia Ball; and the residue be divided between his sons, John and James, and his daughter, Elizabeth, equally. To his said granddaughter, Amelia Ball, he gave $150 on her reaching the age of twenty-one years; to John he gave three-eighths of his estate; the residue to James and Elizabeth, equally; and he appointed John and Catherine executors of his will. By a codicil he appointed plaintiff and defendant trustees of the trusts of his will; that defendant alone resumed the duties of trustee, and was then performing the same; that plaintiff and defendant became executors; had not made final settlement of the estate; that the net balance of the estate was $10,501.80. Defendant cannot state the precise amount, because plaintiff has collected money and made no final settlement thereof; that, for many years, he has estimated the value of plaintiff's interest in the estate of Abraham Cocker at the interest on $3,500 annually; that plaintiff collected money to the estate of Abraham Cocker belonging, and handed over $655 thereof to defendant on December 31, 1860, as trustee and in his representative capacity, and not in his individual capacity; that since then said money has already been treated by them both as part of the estate; that this, and no other, was the consideration of the note; that, on final settlement, plaintiff will be largely indebted to the estate of Abraham Cocker.

For another defense he alleged that there was another action pending between the same parties for the same cause of action in this court; and, for another defense, that the cause of action did not accrue within ten years.

For reply plaintiff denied that the only consideration of the note was as stated in the answer; admitted it to be

true that Cocker died, leaving a will whereby, among other things, he declared that plaintiff and defendant should be answerable each for his or her respective acts, receipts, and defaults, and should be at liberty to retain and allow to each other, out of moneys coming to their hands by virtue of said will, all expenses incurred in executing the trusts thereof; that he gave to plaintiff one-third of all his property during life, remainder to her unborn child; and, in case of the death of such child, then to any other child of plaintiff by testator; or, on failure of such issue, one-sixth thereof to go to his granddaughter, Cordelia Amelia Ball, and the residue to his sons, John and James, and his daughter, Elizabeth (stating the will as the defendant had); and plaintiff denied that defendant alone assumed and entered upon the duties of trustee under said will, or is now acting as sole trustee thereof; denies that, after paying all debts and expenses, the net value of the estate was only $10,501.80; avers that it was about $18,500; that of this money all but about $1,100 was received by defendant, and is retained by him (except about $3,000 paid to legatees other than plaintiff), and used for his own private gain; denies that under said will plaintiff is entitled to only the annual income of one-third of said estate, or that the one-third has been estimated by plaintiff and defendant at $3,500 only; that she is entitled to one-third of the whole estate, which gives her at least $5,000; admits that, prior to December 31, 1860, she collected a large sum of money belonging to the estate of Abraham Cocker, whereof she handed to defendant $655; did not give it to him as co-trustee, nor did he receive it as such; but she paid, and he received, it as her own money to her individually belonging—it having been so declared by the County Court of Kankakee county, Illinois—and defendant has full credit on account of such collection; that the said sum of $655 never has been treated by her, or by defendant, as part of the assets of the estate of Abraham Cocker; denied the pendency of another action for the same cause;

and says it is not true that plaintiff's cause of action did not accrue within ten years before the commencement of this suit, or that it is barred by limitation.

The case was tried before a jury in October, 1874, and here was a verdict for plaintiff.

The note sued on was in these words :

"$655.  *Kankakee City, Illinois, December 31, 1860.*

"I promise to pay Catherine Cocker, or order, $655, with ten per cent. interest per annum until paid out, for value received.                              "John Cocker."

On which was indorsed the following memorandum :

"Interest paid to date in full.   February 17, 1865.

"Catherine H. Cocker."

There was evidence tending to show that, in 1860, there had been a settlement of the estate of Abraham Cocker ; that some of the money belonging to it had been collected by defendant and some of it by plaintiff ; that plaintiff was a legatee of Abraham Cocker ; that all the money which came into her hands was accounted for in the account filed in the County Court of Kankakee county, Illinois, the day the note sued on was given ; that there was a sum of nearly $800 coming to plaintiff as legatee ; that of this she lent $655 to defendant, and took therefor the note sued on in this action ; that all interest thereon, up to February 17, 1865, had been paid, and that nothing had since been paid thereon.   On February 17, 1865, plaintiff had, in the presence of defendant, indorsed upon the note a memorandum of the payment of interest up to that date ; that defendant borrowed this money to enable him to pay for land in St. Louis, and did so pay it.   There was also evidence on the part of defendant tending to show that, prior to December, 1860, plaintiff and defendant had estimated the value of the estate of Abraham Cocker, and that he agreed to pay her interest on the sum of $3,500, at 8 per cent., as her share of the estate, and that he had, for sometime prior to the bringing of this suit, paid her such interest, and that this note was part of the sum of $3,500.   There was evidence

on the part of plaintiff that such interest had been so paid, but that the note sued on was a separate and unconnected matter, and that she did not estimate her share of the estate at so low a figure as $3,500. There was no evidence to sustain the allegation of another action pending for the same cause; and, on the question of the payment of interest on the note up to February 17, 1865, the evidence was conflicting—that is, the testimony of plaintiff and another witness, together with the memorandum on the note, admitted by defendant to have been made at the time, were opposed to the testimony of defendant on this subject.

Upon the evidence the court instructs the jury:

1. "The court instructs the jury that there is no evidence before them to sustain want of consideration firstly set up in defendant's answer, and as to that defense they must find for the plaintiff."

2. "That there is no evidence before them to sustain the defense secondly set up in defendant's answer, and as to that defense, therefore, they must find for plaintiff."

3. "That if they believe that, at any time before the expiration of ten years from the time the note sued on was due and payable, the defendant paid to the plaintiff any part of the principal or interest upon said note, and that, at the commencement of this suit, ten years had not elapsed since the making of said payment, then, as to the third defense of the statute of limitation, they should find for the plaintiff."

4. "That the defendant, by his answer in this case, has made no claim of payment of any part of said note, at any time, and by the petition and reply it is not admitted that any part of it, except interest to February 17, 1865, has been paid; wherefore, in assessing the damages, they must, if they find for the plaintiff, compute interest on the note from February 17, 1865, at ten per cent. per annum, and

disregard all evidence as to payments of interest applicable to this note."

On the part of defendant, the court instructed "that the burden of proof was on the plaintiff to show that defendant paid some interest or principal on the note before it had been ten years due, and that ten years had not elapsed since the payment, in default of which plaintiff could not recover."

The court refused the following instructions:

1. "If the jury believe from the evidence that the $655 received by the defendant December 31, 1860, at the time the note sued on was executed, was the only consideration for said note, and further find that this sum was part of, and belonged to, the estate of A. Cocker, plaintiff could not recover."

2. "That if they believe from the evidence that the money paid over to defendant on December 31, 1860, was money belonging to the estate of A. Cocker, deceased, the plaintiff could not recover."

3. "That, if they find for plaintiff, in estimating her damages they will deduct any money paid by defendant to plaintiff upon said note, as a part of the gross sum of $3,500, estimated to be plaintiff's interest in the estate of A. Cocker, if they further find that parties did make such an estimate, and that said note was included in said gross sum."

4. "No action on the part of the parties to this suit, or the County Court of Kankakee county, Illinois, could divest the funds of Abraham Cocker's estate so as to give plaintiff absolute possession, control, or ownership of any part of said estate, contrary to the provisions of the will of Abraham Cocker."

5. "That the only interest plaintiff has in the estate of Abraham Cocker is such interest as is given her by the will of said Abraham read in evidence; that, under said will,

plaintiff's interest is a life-interest in one-third of said Abraham's estate remaining after the payment of his debts, funeral, and testamentary expenses, and that, upon the death of the plaintiff, such one-third is to be distributed as provided by said will."

1. The theory of the defendant would deprive either of the executors of any right to the absolute possession and control of the funds of the estate of their testator, for, if the plaintiff had no right to these funds, as little could such right vest in the defendant.

If of two executors, A and B, one of them, A, collects a sum of money belonging to the estate of the testator, he holds it for the trusts indicated by the will or the law. He cannot exonerate himself from the obligation to apply it to the discharge of these trusts by turning it over to his co-executor. If he does this, and his co-executor wastes the fund, he remains liable. This is elementary law. The cases cited by respondent's counsel prove it with superfluous rigor.

It follows that A, receiving the money of the estate, is entitled to it as such executor—that is, has the ownership of it coupled with, and subject to, the condition of accounting for it according to the terms of the will and the statute. If, under these circumstances, the money be temporarily placed in the hands of C, a stranger, who agrees to receive it, pay interest for it at a stipulated rate of interest, and, finally, repay the principal, this is a valid contract between such executor and C. The other executor, B, being a stranger thereto, cannot discharge this contract or enforce it. If, by entering into it, A has committed a *devastavit*, his estate and that of his colleague, as well as that of their sureties, must answer it. These are the liabilities incurred by a joint executorship and a joint bond—which is the case most favorable to the argument of the appellant.

If, instead of A lending the money to C, he selects B as his bailee, no reason is perceived why, in respect of the

ascertained sum, a valid contract, such as was contemplated, by the note in this case, cannot be made. The note in this case is perfectly explicit. By placing the money in the hands of defendant, plaintiff certainly incurred a risk, and perhaps violated her duty as executrix, for she knew that defendant was about to apply the money to his own use. It would be monstrous, however, to permit him to take advantage of her good nature to prevent her recovering back from him the money he agreed to pay. The form of the note does not suggest an idea on the part of maker or payee that their relations as executor and executrix were involved in the transaction, and we do not think that they could be shown to be. These considerations dispose of the first two defenses set up in the answer, and leaves, as the only remaining controversy, the issue under the plea of the statute of limitations.

2. On this point the matter of fact to be inquired of by the jury was the payment of interest within ten years before the institution of the suit, and before the bar of ten years from the maturity of the note had become complete. The instructions given by the court on this head were carefully guarded, and appellant cannot complain of them.

For these reasons the judgment must be affirmed. But we remark that, but for the fortunate circumstance that only one issue remained for the consideration of the jury, to wit, that of limitations, great danger of a reversal—not upon the merits—would have been incurred by the *form* of the first and second instructions given at the instance of the plaintiff. The jury were told that the first and second defenses set up by the answer are not supported by evidence.

If the jury had thereby been sent to the answer to ascertain what these defenses were, and there had been the faintest possibility of their failure to construe the pleadings correctly, it might have been our disagreeable duty to reverse and remand this cause. It is the duty of the *nisi prius* court to tell the jury what are the issues to be tried by

them, and it is error to refer them to the pleadings for this information. *Butcher* v. *Death & Teasdale*, 15 Mo. 270. We consider this error cured by the other instructions and the nature of the record, and, hence, we only call attention of counsel to it in order, first, that it may not be supposed that we have overlooked it ; and, secondly, that any approach to it may be avoided in future. In the present case we think the jury were substantially informed that the controversy turned on the plea of the statute of limitations, and that appellant was not injured by the language of the first and second instructions.

3. To exclude a conclusion which the appellant urges with much zeal, we say that we decide nothing as to the trusts to which the respondent will hold the money recovered in this action when appellant has paid it to her. All questions of that kind are premature, and, therefore—although we really are unable to perceive in what manner the trusts impressed upon a fund can be supposed to be avoided by shifting the fund from one hand to another, and finally getting it back into the possession of the person who was charged with the execution of the trusts—we think it better to leave untouched, for the present, all considerations of such consequences. If the appellant is interested in the manner the respondent should discharge any such trust, nothing in the present record will preclude his holding her to account for the money which, by the affirmance of this judgment, he in his individual capacity is ordered to pay to her in her individual capacity.

All the judges concur in this affirmance.