## Kirk, Trustee, etc., v. Williams, Ex'r, etc.

*Circuit Court, W. D. Tennessee.   April 10, 1885.*

1. STATUTE OF FRAUDS—SALE OF LANDS—PROMISE TO PAY PURCHASE MONEY—
   WRITTEN PROMISE NOT REQUIRED.
   In Tennessee the statute of frauds is fully answered by the grantor's deed for
   the land, and the grantee's promise to pay the purchase money need not be in
   writing, but may be proved by parol.

2. SAME SUBJECT—ACTION ON THE DEED—EVIDENCE.
   It has not been decided in Tennessee whether an action for the purchase
   money will lie upon the deed itself against a grantee who has not signed but
   has accepted it and the estate conveyed, but, in an action on the case for the
   money, the deed, its acceptance, and possession under it, are evidence of a prom-
   ise to pay the consideration; and from those facts such a promise will be im-
   plied.

3. SAME SUBJECT—LIEN RESERVED—EFFECT AS EVIDENCE.
   Where the grantor reserves a lien for the purchase money, it is in effect as if
   the grantee had signed a mortgage or deed of trust; and while it is not settled
   in Tennessee that an action will lie upon such implied mortgage, as it would
   upon one actually signed by the debtor, in an action for the consideration not
   founded on the deed, the facts that the lien is reserved and that the grantee
   has accepted the estate are conclusive proof of a promise to pay the money.

4. SAME SUBJECT—UNSIGNED MEMORANDUM—LETTERS.
   Where a grantee, at the request of the grantor, has given, in his own hand-
   writing, an unsigned memorandum relating the facts of the transaction, but
   containing in itself no explicit promise to pay the money due, this memorandum
   is competent and relevant as evidence of the grantee's admissions of facts from
   which the law implies the promise to pay, although it might not be sufficient
   to answer the statute of frauds if a written promise were required.   The same
   is true of a letter written by the grantee, importing by its language a recogni-
   tion of the debt, though not an express promise to pay it.

5. PLEADING—ACTION ON FACTS—PROFERT—DEED.
   Although a declaration may make profert of a deed, if it appear that the
   plaintiff has a cause of action on the facts of the case, one of which is the exe-
   cution of the deed, the statement of it will be taken, under the Tennessee Code,
   only as an inducement, and not as implying that the deed is the foundation of
   the action.

6. STATUTE OF LIMITATIONS—ACKNOWLEDGMENT—PARTIAL PAYMENTS—EFFECT
   AS EVIDENCE.
   While, in Tennessee, partial payments, either of principal or interest, stand-
   ing alone, are not such an acknowledgment of the debt as will save the bar of
   the statute of limitations, they are taken in connection with other circumstances
   as potential there as elsewhere to prove such an acknowledgment.   *Held*, there-
   fore, where it appears that the debt was intended by the parties as a perma-
   nent investment of a trust fund; that the interest was paid quarterly in ad-
   vance before and for many years after the time limited by the statute had
   expired; that these payments were accompanied by letters of remittance and
   receipts to be signed; that the debtor, at the request of the beneficiary for some
   evidence of the transaction, prepared the memorandum and letter above re-
   ferred to after the bar attached,—that these circumstances were sufficient evi-
   dence of an acknowledgment of the debt, from which the law implies a promise
   to pay within six years before the suit was brought.

7. SAME SUBJECT—SUFFICIENCY OF LETTERS.
   The writings above mentioned contain no explicit promise to pay the debt
   after the bar attached; but since no such promise is required in Tennessee, but
   may be implied from an acknowledgment of a subsisting liability, they furnish
   evidence of that acknowledgment in this case.

The defendant's testator, Joseph R. Williams, sold a lot in Memphis to C. M. Fackler, taking a deed of trust to secure the purchase money. Fackler settled the property on his wife and children by a deed of settlement, making the plaintiff and another trustees. The purchase money remaining unpaid, and interest having accumulated, the settlement trustees, to avoid a sale for the purchase money, reconveyed to Williams, by a deed dated February 28, 1866, and signed by them and Mrs. Fackler, whose husband had died leaving children. It is not signed by Williams, but contains the clause quoted by him in the paper to be hereinafter inserted as a part of this statement of facts. He accepted the deed and went into possession, remaining until his death, in February, 1881, and paid the interest quarterly, in advance, during this time. For reasons given in the subsequent correspondence he withheld the deed from record, and it was not registered until after his death. His widow and devisee remained in possession until, by a proceeding in the equity courts of the state, the lien reserved in the deed was foreclosed. This is an action of *assumpsit* for the balance of the purchase money, amounting now to $6,508.08. The defendant pleads the statute of frauds, the statute of limitations, and *plene administravit.* From an agreement of parties filed, and from other proof, it appears, in addition to the foregoing facts, that when Williams would pay the interest, by draft or otherwise, he sent to Mrs. Fackler a written receipt, which she signed, some of which are mentioned in nine letters filed and proved in the record, covering remittances of interest on the $10,000 from July 15, 1878, to December 4, 1880, all in his handwriting. One of the receipts written wholly by him, which was not signed but retained by her, is produced. It reads as follows:

"Received of Joseph R. Williams three hundred dollars, in full of interest up to first July, 1877, on the sum of $10,000, specified and secured to be paid in deed of J. J. Fackler and E. C. Kirk, trustees, and myself, (then Anna R. Fackler,) to Joseph R. Williams. $150 of this $300 was invested in sight draft on Paris, France, and remitted to me from New York in December, 1876, for interest up to April 1, 1877; and $150, being in full of the interest as stated up to first July, 1877, was invested in sight draft on Paris, France, in New York, and remitted to me and received by me, as shown by this receipt."

Some time in 1877, Blount, the present husband of Mrs. Fackler, at her request, applied to Williams for some evidence of the contract of purchase, because he had withheld the deed from registration, and received from him a paper wholly in his handwriting, but not signed, which reads as follows:

"No. 67 UNION STREET.

"Joseph R. Williams' deed to C. M. Fackler, November 9, 1857. Conveyance in trust by Fackler to Shepherd and Jones, as trustees, to secure purchase money. Deed of C. M. Fackler to J. J. Fackler and E. C. Kirk, trustees, tenth August, 1859, conveys subject to lien created by deed to Shepherd and Jones, trustees, (purchase money) in trust 'for the use and benefit of Anna Kirk Fackler, wife of said Calvin M. Fackler, that the same shall not be subject

to his control in any way, or liable for his debts or contracts in any form;' also, 'that whenever, in the opinion of said trustees, or the survivor of them, it may be thought to the interest of said Anna K. to sell or dispose of the premises, the same may be sold, upon condition (1) that the said Anna K., of her own free will, consent to the same; and (2) that the proceeds thereof shall be invested for her separate use and benefit under the same provisions which guard the conveyance to her; that whenever the said Anna K. shall be capable, under the law, of holding this property in her own name free from the debts or contracts of said C. M. Fackler, that it shall be the duty of said trustees, or survivors of them, to convey it to her during her natural life, and after her death to her children by the said C. M. Fackler; that, in the event of a sale or change of occupancy, the right is hereby reserved to Joseph R. Williams, in preference to all others, of purchasing the premises at a fair price:' also 'in the event of the death of the said Anna Kirk Fackler, the said trustees will hold the premises hereby conveyed for the benefit of her children by the said C. M. Fackler.' The deeds mentioned are all of record. The trust deed to Fackler and Kirk was originally written so as to give the property to the wife absolutely, upon extinguishment of lien for purchase money, but Mr. C. M. Fackler would not sign in that way, and the remainder over to her children by him had to be and was added.

"On the twenty-eighth of February, 1866, after the death of C. M. Fackler, the property was sold to Joseph R. Williams for $23,000. $13,000 was due on it, and it was liable to be sold to pay that sum by the trustees, Shepherd and Jones. The lien created by this trust was extinguished by the sale, and there was left of the purchase money $10,000, specified in and secured to be paid by the deed which was then made to Joseph R. Williams by John J. Fackler and Edwd. C. Kirk, trustees, and Anna K. Fackler. This conveyance sets forth the preceding deeds, the situation of the property, the facts and reasons which make the sale a proper one, particularly so far as the interests of the children (remainder-men) are concerned, the consent of 'her own free will' of Mrs. F. to the sale, and closes as follows: 'The purchase money due said Williams, with interest to this date, is thirteen thousand dollars, and forms part of the consideration of this sale, and satisfies and extinguishes the same to that extent. The residue, being ten thousand dollars, is to become due and payable in two years from this date, and is to bear interest at the rate of six per cent. per annum, payable quarterly. But the privilege of paying the principal sooner than the time named above is reserved by said Williams, should he desire to do so. The balance is by express agreement to constitute a lien upon said property until it is satisfied, and stands subject to the trusts of the settlement in favor of Mrs. Fackler and children, and to be reinvested, as provided by the trust deed, when it can be advantageously done.' This deed was duly witnessed, but has not yet been placed on record. There were some good reasons influencing me in the interest of Mrs. Fackler and the children to withhold it from registration. I do not know that they now exist, and if they do not, upon my carefully considering the matter, which I have not done for a long time, I will cause it to be put on record. I am rather of opinion, however, that it may be best not to do so, as the children will soon be of age. In keeping it from record, I, of course, only jeopardize my own interest, as the deed is *my* only title to the property. As the records *now* stand, the purchase money and lien for its payment, as shown in the trust deed to Shepherd and Jones, being extinguished and inoperative, the property, by the record, is absolute in Fackler and Kirk, trustees, for benefit of Anna K. during life, and her children of C. M. F. after her death, so that she and the children are not in danger of loss, but the contrary should the deed to me not be recorded. However, if I find no objection, after considering the matter, I will put it on record. The interest on the $10,000 has been paid up to first January, 1874."

In May, 1877, Kirk, the plaintiff here, as surviving trustee, wrote to Williams, "demanding and requiring" that he should place the deed upon record in the register's office of Shelby county. This letter he had delivered to him by a mutual friend. Williams replied to it by the following letter, which also mentions incidentally another parcel of real estate in this city, as to which he was himself the trustee for Mrs. Blount:

."MEMPHIS, May 28, 1877.

"*E. C. Kirk, Esq., New York*—DEAR SIR: I wish you would advise with some legal friend in New York, or with some clear-headed business man, as to the propriety of putting the deed on record. I do not think it is to Anna's interests, as she is now situated. The youngest of the children will be of age in less than two years, and then it can be done, if thought best. You are aware that there was no marriage contract with Col. Blount. I have received a very abusive letter from him. He seems to have taken offense at my requesting Anna to send me her *direct* address, as I wished to consult with her as to my answer to Gippie's bill in chancery about the Main street lot conveyed by you to Col. Fackler, which is still in suit. I stated to Anna that I wanted to know *her* wishes and *feelings*, and *not* Col. Blount's; that he could be consulted on law points involved, but not otherwise. You know, and Col. Blount knows, that my appointment as trustee was to stand between her and her first husband; and, if so, certainly as to the second husband; and that it was *my duty* to make *all* my communications as trustee to her *in person*, or, if by letter, in such mode as would be sure to reach *her*, and not her husband. I know that this was *my duty*, as it is *yours*. Col. Blount is not a proper adviser for either *you* or *me*. He is anxious to get hold of this trust fund, and is in a position to *improperly* influence Anna. There are several reasons why this deed should *not* go on record, and not a single one why it should. Anna will tell you that I have never failed to pay her the interest quarterly *in advance*. It is now paid up to first July, with $25 over, which I sent Christmas to Turner, and did not take out of the January or April remittance. There could not possibly be any investment on which interest has been and will be more promptly paid. If I paid over the money, it would have to be loaned out here on real estate, by the terms of the deed. It could not be loaned at more than legal interest, which is six per cent. No court here would permit it to be disturbed or changed so long as *I* was willing to keep it, because it could not be more safely invested, as you well know, and as has been shown by the prompt payment of interest in advance. I think the friends you may consult with will agree with me, and you surely will, that nothing could be worse for Anna in her present situation than to part with this small but regular income for the comparatively trifling sum for which *her life-interest* in it could be sold, and which would be at once absorbed in paying Col. Blount's debts and expenses. Now, as long as this deed is kept *off* the records, Col. Blount finds difficulty in selling Anna's life-estate for what it might bring, and putting it in his pocket; and it is your *duty* and *mine* to render such a sale difficult, and even to regard Anna as *improperly* influenced if she should wish it. You surely agree with me in this. Your clear-headed friends will agree with me. You cannot doubt my friendship for Anna, and you know, or if you don't you can easily find out, that I am not getting six per cent. on my money, and I certainly would not keep this a day except on Anna's account. My keeping it has insured the *regular* payment of interest, and that with her was, *and is*, bread and meat, as she writes me. These are some of the reasons why the deed should *not* be recorded, which must govern *you* and *me*. If you will consider that this deed is the only evidence *I* have to the lot,—in fact, gives me my title,—you will see that I am

the party to be anxious about the record of it, and that Anna's interest is not jeopardized in any way by not recording it. Col. Blount's sale of Anna's life-estate is made difficult; that is all. Now, Ed., I wish you to reconsider this matter; to look after Anna's interest; to understand that neither you nor I are to consult with Col. Blount, or be influenced by him; and write to me. And I wish you to consider this communication *confidential* so far as Col. Blount is concerned. He is out with me because I have baffled him. Don't *write* Anna what I have written. It is not necessary to write to Col. Blount, or to *write* to Anna what I have written. You can think for yourself. You are in fact bound as a trustee to do so. Consult with any of your friends, and see if all do not agree with me that, to protect Anna's interest, it is best this deed should not be recorded at present.

"Yours, truly,                                                     Jos. R. WILLIAMS."

To this letter Kirk replied, insisting on the registration of the deed, which, however, was not done for more than a year after Williams' death. No verbal or written promise to pay the $10,000, except such as can be implied from or based on the facts above stated, has been proved in the case. It is agreed that defendant has fully administered the personal assets coming into his hands.

*Clapp & Beard*, for plaintiff.

*Craft & Cooper*, for defendant.

HAMMOND, J. The defendant insists that no promise to pay for the land has been proved by any memorandum thereof in writing, signed by the party sought to be charged, and that the statute of frauds, therefore, is a complete protection. Code Tenn. (T. & S.) § 1758. Counsel argues that, Williams not having signed the deed, the plaintiff's only remedy is against the land itself, in the absence of some separate note, bond, covenant, or other like security containing a promise, signed by him, to pay the purchase money; that, although a vendor may proceed to enforce a technical vendor's lien, some mortgage that has been given, or a reserved lien like that contained in this deed, as the case may be, he can thus subject the land only because there has been attached to the grant a limitation or condition, which the grantee has accepted or created, that he shall not hold the land without paying the consideration for the grant; but that, whether he gives a mortgage, a lien is implied by the law, or is reserved by the grantor, this does not operate to bind him further than the land goes; and, to hold otherwise, is to violate the statute of frauds. There certainly seems to be some rule like this as to a mortgage, for the mortgagor, although he signs the mortgage deed, is not bound beyond the land, unless there is an express stipulation or covenant in the deed to that effect, or some separate bond or other promise to pay the money. And so much favored is the doctrine that no such promise shall be implied from the mortgage, that some states have enacted statutes forbidding the implication. 4 Kent, (12th Ed.) 145, and notes; 1 Jones, Mortg. §§ 677, 678; *Scott* v. *Fields*, 7 Watts, 360. But this rule does not arise out of the statute of frauds at all, but from the peculiar nature of a mortgage, which was the conveyance of an estate upon condition, which not being performed, the estate be-

came absolute; and it may be doubtful if the rule prevails in Tennessee, as we shall presently see.

It is difficult to determine or define the precise character of a lien reserved in the face of a deed, like that we have here, but it seems in Tennessee to be settled that it is substantially a mortgage; that is to say, it stands as if the vendee had executed a mortgage to the vendor for the purchase money, and "creates an express lien *by contract or agreement of the parties.*" *Lincoln* v. *Purcell,* 2 Head, 142; *Thompson* v. *Pyland,* 3 Head, 537; *Hines* v. *Perkins,* 2 Heisk. 395; *Chitwood* v. *Trimble,* 2 Baxt. 78; *Miskelley* v. *Pitts,* 1 Tenn. Leg. Rep. 207; *Gudger* v. *Barnes,* 4 Heisk. 570. In this last case the court was considering the position of a purchase under a title bond, the vendor reserving the legal title as a security for the purchase money, and this too was likened to a mortgage. Because of the confusion that has grown up on the question, the court takes the pains to review the relation of vendor and vendee, in such cases, for the very purpose of refuting the notion that the vendee holds the land on any *condition* upon a breach of which the vendor's rights attach, and decides that it is solely by the contract of the parties that the lien exists; the vendee being in possession under its stipulations, one of which is that he *agrees* to the lien for the purchase money as if upon his own contract. If this be so where the legal title is reserved to the vendor *a fortiori,* must it be so where that passes to the vendee, and only a lien is reserved on the face of the deed, as in the other cases cited?

Of course, it must be observed that while the court assimilates all these liens to that of a *mortgage,* it does not mean the old common-law mortgage, in its technical sense, but the modern signification of that term, as one applied to any lien created by express contract of the parties as a security for a debt. These cases, therefore, seem to militate against the argument of the defendant construing this deed, particularly since, within itself, there is a recital that the $10,000 is, "by express agreement, to constitute a lien upon said property." The circumstance of giving a note for the purchase money cannot be material, because that is a wholly independent contract, and the agreement of the vendee that the vendor shall have the lien provided for —whatever be its characteristics—rests alone on an implication from his acceptance of the deed reserving the lien, for he has never signed it. And in one of the above cases the court even held the lien efficacious to secure the notes of strangers to the original contract, which were substituted for the notes of the vendee. *Hines* v. *Perkins, supra.* This agreement for a lien is as much within the statute of frauds as a promise to pay the purchase money could be, and if one can be implied from a bare acceptance of the deed, without a violation of that statute, it is difficult to conceive why the other may not be. True, the defense was not suggested in these cases, but so important a matter could scarcely have been overlooked by counsel and the court. Our court seems to treat a transaction like this as a contract by the vendee

to secure the vendor; as if, in fact, he had formally executed a deed of trust or mortgage; and these adjudications will show that, in many respects quite as important as the statute of frauds in its relation to the contract, this estimate of the transaction has a formidable bearing on the rights of the parties. Moreover, in *Couger* v. *Lancaster*, 6 Yerg. 476, it was held that an action of debt would lie upon the mortgage itself, without any express stipulation to pay the money, the same as if a separate bond or note had been given. It was, in fact, a deed of trust, called by the court a mortgage, but it contained no other stipulation as to the debt than the ordinary condition of such instruments that, if the amount secured should not be paid by a given time, the trustee might sell. This seems to be somewhat contrary to the general rule on this subject, that if there be no express covenant to pay the money contained in the mortgage, the creditor has no other remedy than a foreclosure, and is confined to the land, unless he has some separate note or bond on which to bring his action; but, taken with the other cases, it shows the tendency of our state court to treat the mortgage itself as sufficient evidence of indebtedness without a separate bond or note.

Whether this applies as well to that implied mortgage arising on a lien reserved in a deed not signed by the debtor, it is unnecessary to determine, but it is difficult to see why it should not be so applied, and it may be mentioned here that, while the cases cited speak of separate bonds or notes as necessary, this is somewhat misleading, for the reason that, outside of those cases governed by the statute of frauds, a debt may rest in parol, and a mortgage or like security may be given for it, it being none the less a debt for which an action would lie; as if, for example, a deed of trust or mortgage should be given to secure an open account. It will be found, I think, that the real inquiry is whether, under the circumstances, there was a debt due which is secured, or only a transaction from which no more can be implied than that the security given should be the full extent of the liability; and this inquiry may arise on a proceeding to foreclose the lien, for, in modern practice, either by statute or rule of court, it is competent for the foreclosing court to give judgment for that part of the debt which remains after the lien is exhausted, or it may arise on an independent action for that balance. It is, after all, an inquiry for the intention of the parties, and that intention should prevail when it is reached by that which is competent proof of it. The defendant files, in support of his argument, an unreported opinion of the supreme court of Mississippi, of date March 17, 1884, in the case of *Vicksburg R. Co.* v. *Oates*, and a printed brief upon an application for rehearing, in which the whole doctrine of the effect of the acceptance of a deed-poll by the grantee is considered in relation to the covenants thereof as against him. It was the case of a grant to a railroad company, imposing certain obligations upon the grantee as to the keeping up of stations, use of cars, etc. The bill alleged non-compliance with the

obligations by the company, and asked that it be compelled to perform or to surrender the premises, or for an account of damages, etc. There was a demurrer, which the court below overruled, and an appeal, upon which the decree below was affirmed. The statute of frauds, among other things, was relied on by the demurrer. The court held that the proper construction of the deed was that the stipulations were imposed as conditions and not as promises or assumptions of personal obligations by the grantees; that the estate was forfeited by a breach of the conditions; and that the grantor had a right to re-enter; but that, while this was the technical situation, it was apparent from the nature of the contract that the parties did not intend, in fact, that there should be a forfeiture and re-entry, because it was not expected that a railroad, with its iron rails, ties, etc., should be torn up and the land returned in a less valuable condition to its former uses, to the detriment of the grantor and injury of the grantee; and, as no specific performance could be decreed for want of a promise binding on the grantee, the only relief possible was compensation or damages.

This seems to me to sustain the idea that on a proper proceeding, where there is no violation of a positive rule of law, like the statute of frauds, the court will enforce the actual intention in spite of the technical attitude of the estate as conveyed by the deed; so that, if the defendant should be right in his contention here as to the construction of this deed, it would not aid him as against his actual intention to pay for the land, if that can be proven by a parol promise to do so. This opinion and brief are full of authorities that might be useful in determining the question so much argued as to the remedies at law and in equity which a grantor has to compel compliance with the stipulations of his deed made for his own benefit, and imposed on the grantee solely by his acceptance thereof; but I do not see that any of them deal with the obligation to pay the purchase money, but only with those stipulations that concern the use of the land and the like, providing for easements, etc. The court says:

"The doctrine that, by accepting an estate conveyed by deed-poll, the grantee binds himself to the performance of the covenants contained therein as fully as though he had signed and sealed the instrument, though recognized in many cases, was never satisfactory to some of the most learned judges, and, without regard to the statute of frauds, has been repudiated by many courts." Platt, Cov. 16; *Lock* v. *Wright*, 1 Strange, 571; *Sutherland* v. *Lishman*, 3 Esp. 42; *Kimpton* v. *Eve*, 2 Ves. & B. 353; *Maule* v. *Weaver*, 7 Pa. St. 329.

I am informed by the clerk of the court that, since this case was submitted, the opinion was, on reargument, withdrawn, and the court contented itself with overruling the demurrer, and reserving these questions until a final hearing of the case. I cite it merely to show the force of defendant's position, and to say that an examination of many of the cases cited by the court and in the brief leads me to the conclusion that the apparent conflict of cases may be reconciled by attention to the distinction between using the deed as a foundation

of the action, and as mere evidence of facts which will support an action *aliunde* the deed itself. *Locke* v. *Homer*, 131 Mass. 102; *Lee* v. *Newman*, 55 Miss. 372; *Bishop* v. *Douglass*, 25 Wis. 696; *Newell* v. *Hill*, 2 Metc. 180; *Finley* v. *Simpson*, 2 Zab. 311; *Cooper* v. *Louanstein*, 37 N. J. Eq. 284; S. C. 22 Amer. Law Reg. (N. S.) 738, and notes; Browne, St. Frauds, 7, 124; 2 Sugd. Vend. 238, and notes; Abb. Tr. Ev. 385; Rawle, Cov. 462.

The case of *Cooper* v. *Louanstein* is a very recent and elaborate consideration of the subject, and in one of the opinions the very distinction above adverted to was taken, namely, that while the covenant might not establish an easement, and be binding as such on the grantee, yet "the statement in the deed, it being accepted by Louanstein, was a circumstance of evidence, more or less strong, as the case may be, tending to show a parol agreement for such easement." And as there had been a part performance it could be enforced, notwithstanding the statute of frauds. The dissenting opinion maintains with force that even at common law the deed became, by its acceptance, *ipso facto*, the deed of the grantee, and he might be sued in covenant upon it.

Now, this suit is not an action on the deed, but on a promise to pay the consideration for the land. It is true, the declaration makes profert of the deed, and is susceptible of that construction, but under our peculiar mode of pleading in Tennessee, where all forms are abolished, and the pleader may sue upon "the facts of the case," it must be treated as a statement of the facts and maintained as a good pleading, if, on the facts, it contains a sufficient cause of action in any view of them. The construction placed on the declaration by plaintiff's counsel, that the deed is stated merely as an inducement, and as one of the facts of the case, must therefore prevail, if he is, on that construction, entitled to a cause of action, whether he would be entitled to sue on the deed itself as a foundation for the action or not. *Whittenton Manuf'g Co.* v. *Memphis & Ohio River Packet Co.* 21 FED. REP. 896. So treating it, the question is whether the statute of frauds requires the promise to pay for lands, for which the grantee has accepted a deed, to be in writing; and if not, what effect the deed and its acceptance may have as evidence of the promise, and what effect the other writings relied on in this case may have as evidence of that promise, and not whether the deed may be a foundation for the action, or whether it and the other writings are sufficient in themselves to answer the statute of frauds. If the statute of frauds requires that promise to be in writing, in view of the conflict of authorities already noticed, while I am inclined to think the deed itself might, in Tennessee, be a foundation of the action, I am not prepared to say that our court has so, precisely, decided; nor am I satisfied that the unsigned paper written wholly by Williams would answer the statute of frauds as a memorandum of that promise. It seems to be a kind of chronological or historical statement of the facts, in which his name appears,

written by himself, but it is not clear that he intended it *as a signature* which was to be as efficacious as if he had formally signed the paper. This intention seems to be necessary. Browne, St. Frauds, §§ 354–357; 1 Sugd. Vend. 212; *Barry* v. *Coombe*, 1 Pet. 640; S. C. Lawy. Pub. Co. Ed. and notes.

But, however the law may be elsewhere, it is established in Tennessee that the promise to pay the consideration need not be in writing; that the execution of the deed by the grantor satisfies the statute of frauds, and an action will lie for the purchase money, which may be sustained by parol proof. *Davis* v. *Tisdale*, 4 Yerg. 172; *Whitby* v. *Whitby*, 4 Sneed, 472; *Perry* v. *Central S. R. Co.* 5 Cold. 138; *White* v. *Blakemore*, 8 Lea, 49, 59; *Mowry* v. *Davenport*, 6 Lea, 80, 93; *Taylor* v. *Ross*, 3 Yerg. 330; *Gilman* v. *Kibler*, 5 Humph. 19. Here, then, the action may be maintained, and the alleged promise to pay for the land is proved by the execution of the deed, its acceptance by defendant, his possession under it, the unsigned paper written by himself taken as his *admission* of facts implying the debt, by the admissions contained in his letter of May 28, 1877, and by his payment of the quarterly interest for all the years before his death; for, as was said in *Howel* v. *Price*, 1 P. Wms. 291, 294, "the running on of interest, and its carrying interest, was proof of its being a debt." And these facts prove the promise averred in the declaration, whether the documents would be, in themselves, sufficient to answer the statute of frauds or not, if that statute required it to be in writing. No reasonable mind can doubt that there was an express promise to pay, and that it is reasonably proved by such facts; but certainly the law would conclusively imply from them a promise in support of the averment in the declaration.

Somewhat similar reasoning has led me to the conclusion that the statute of limitations cannot avail the defendant. We have no statute requiring the new promise to save the bar to be in writing, nor, indeed, any rule of law requiring an express *promise* at all, but only an express *acknowledgment* of a subsisting debt. The supreme court of Tennessee, recognizing the intensity of a temptation to evade the statute by fraud and perjury, has, in the absence of that wise legislation which prevails in some states requiring a new promise in writing, held very rigidly to the rule that there shall be no implication of a waiver of the statute from partial payments, either of principal or interest, and requiring a distinct acknowledgment on the part of the debtor of a continuing liability to pay. Mr. Chief Justice TANEY has stated the rule as to the character of acknowledgment that will save the bar in terms that fully meet the requirements of the Tennessee cases, as I understand them. He says:

"In order to remove the bar of the statute it is necessary that there should either be an express promise to pay, or an admission of the debt in such terms as would imply that the party was liable and willing to pay it." *Georgia Ins. Co.* v. *Ellicott*, Taney, Dec. 131; *Bell* v. *Morrison*, 1 Pet. 362; *Moore* v.

*Bank of Columbia,* 6 Pet. 86; *Fort Scott* v. *Hickman,* 112 U. S. 150; S. C. 5 Sup. Ct. Rep. 56.

And Mr. Justice DAVIS likewise enunciates a rule, as to the effect of partial payments, that is the same as we have it in Tennessee. *U. S.* v. *Wilder,* 13 Wall. 254. So, if the ruling in *Palmer* **v.** *Andrews,* McAll. 491, that this is a commercial question which the United States courts will decide independently for themselves, be correct— which I doubt—the two jurisdictions in this state quite agree on the subject. *Russell* v. *Gass,* Mart. & Y. 270; *Belote's Ex'rs* v. *Wynne,* 7 Yerg. 533; *Thompson* v. *French,* 10 Yerg. 453; *Hale* v. *Hale,* 4 Humph. 183; *Hunter* v. *Starkes,* 8 Humph. 656; *Butler* v. *Winters,* 2 Swan, 91; *Broddie* v. *Johnson,* 1 Sneed, 463; *Rogers* v. *Southern,* 4 Baxt. 67; *Steel* v. *Matthews,* 7 Yerg. 313; *Locke* v. *Wilson,* 9 Heisk. 784; S. C. 10 Heisk. 441; *Folk* v. *Russell,* 7 Baxt. 591.

I do not understand that either the supreme court of the United States, or the supreme court of the state, excludes the circumstance of a partial payment from the consideration of the triers of the fact whether there has been a new promise or an acknowledgment of the debt or not, but only to limit its probative value so that of itself it shall constitute neither a promise nor acknowledgment. Elsewhere, even when there has been a statute, as in England and some of our states, requiring the new promise or acknowledgment to be in writing, the statute usually makes an exception in favor of the implication of an acknowledgment from partial payments, which shows the potential character of that circumstance where that rule has prevailed. But with us, standing alone, part payment implies nothing as an acknowledgment of the balance of the debt, for that which he pays may be all the debtor wishes to admit to be due; but if there be other circumstances attending the payment, showing that it could be made only on a distinct acknowledgment of the whole debt, those circumstances, taken with the payment, are a sufficient basis for the implication of a promise to pay that will save the bar. This was always the correct rule, even where partial payments were fully recognized as saving the bar, and is yet, under the exception in their favor, contained in the above-mentioned statutes. Any departure from it was a misunderstanding of the rule. In *Morgan* v. *Rowlands,* L. R. 7 Q. B. 493, it is stated that part payment is not sufficient "unless it be such that a jury might fairly infer a promise to pay the remainder. No doubt, very slight circumstances might be sufficient to support such an inference where there is a legal duty to pay." And the circumstances surrounding payment were scrutinized, perhaps not always with the best judgment, before the fact of payment could be treated as an acknowledgment, and often it was unavailing. Thus the fact that the payment was that of *interest* on the debt was often, though not always, a controlling circumstance in favor of the acknowledgment. If the debt was payable "on demand," the fact that interest was paid was quite conclusive of an acknowledgment to save the bar; if not so

payable, the circumstance was of less force; and there is a distinction sometimes taken between interest accrued *before* and *after* the bar attached. *Bamfield* v. *Tupper*, 7 Exch. 27; *Brown* v. *Rutherford*, 14 Ch. Div. 687; *Maber* v. *Maber*, L. R. 2 Exch. 153; *Morgan* v. *Rowlands*, *supra; Sigourney* v. *Drury*, 14 Pick. 387, 391; *Gilbert* v. *Collins*, 124 Mass. 174; *Hopkins* v. *Stout*, 6 Bush, 375; *English* v. *Wathen*, 9 Bush, 387; *Cocker* v. *Cocker*, 2 Mo. App. 451; *Shannon* v. *Austin*, 67 Mo. 485; Wood, Lim. 150, and notes. Nor has Lord TENTERDEN's act in England, nor the legislation in our own states, that have substantially re-enacted that statute, changed the rule either as to the precise character of the promise or acknowledgment required, or as to the effect of partial payments, except in states like California and Nevada, which have left out the exception in favor of partial payments contained in Lord TENTERDEN's act, or Wisconsin, which has abolished all kinds of *acknowledgments,* and requires an explicit written *promise.* The only effect of the legislation is to require a written memorandum of the acknowledgment or promise; but when we come to test the sufficiency of the memorandum, we apply precisely the same rule as before in reference to the character of the promise or acknowledgment, as shown by the parol testimony. Only the mode of proof has been changed. In *Lee* v. *Wilmot*, L. R. 1 Exch. 364, in considering the sufficiency of a letter, it is said:

"If there be a distinct acknowledgment, it is not necessary there should be a promise in explicit terms; but from the acknowledgment a promise may be inferred, unless it be accompanied by a refusal to pay, or any other circumstance which excludes that inference."

And in *Re River Steamer Co.* L. R. 6 Ch. App. 822, Lord Justice MELLISH says:

"Now, it is perfectly settled law what is the description of letters which will take the case out of the statute. * * * Before this statute, not only a verbal promise to pay a debt more than six years old, but a bare, unconditional acknowledgment of its substance made within six years before action brought had been held sufficient to take the case out of the statute. But now, in order to revive the liability of the debtor, after the expiration of the six years, by subsequent acknowledgment or promise, there must be proof of some writing, signed by himself, either containing an express promise to pay the debt, or being in terms from which an unconditional promise to pay it is necessarily implied. If, therefore, the writer, although he admits the debt, refuses to pay it, or reserves the matter for further consideration, or refers the creditor to some third person for payment, or the like, this will not be sufficient to prevent the operation of the statute. That being the rule, there must be one of these three things to take the case out of the statute: Either there must be an acknowledgment of the debt from which a promise to pay is to be inferred; or, *secondly,* there must be an unconditional promise to pay the debt; or, *thirdly,* there must be a conditional promise to pay the debt, and evidence that the condition has been performed." ....

The mere writing of the name and date on a past-due note was held sufficient. *Bourdin* v. *Greenwood*, L. R. 13 Eq. 281; *Quincey* v. *Sharpe*, 1 Exch. Div. 72; *Skeet* v. *Lindsay*, 2 Exch. Div. 314. And these cases,

professedly, only follow the rule laid down by Lord TENTERDEN himself long before his celebrated act was passed. *Tanner* v. *Smart*, 6 Barn. & C. 603; *Cleave* v. *Jones*, 6 Exch. 573. And see *Fairbanks* v. *Dawson*, 9 Cal. 90; *Pena* v. *Vance*, 21 Cal. 142; *Palmer* v. *Andrews*, McAll. 491; *Wilcox* v. *Williams*, 5 Nev. 206; *Pierce* v. *Seymour*, 52 Wis. 272; S. C. 9 N. W. Rep. 71; *Williams* v. *Gridley*, 9 Metc. 482; *Sibley* v. *Lumbert*, 30 Me. 253; *Palmer* v. *Gillispie*, 95 Pa. St. 340; *Wesner* v. *Stein*, 97 Pa. St. 322; *Minniece* v. *Jeter*, 65 Ala. 222; *Harper* v. *Fairley*, 53 N. Y. 442; *Pickett* v. *King*, 34 Barb. 193; *First Nat. Bank* v. *Ballou*, 49 N. Y. 155; 1 Smith, Lead. Cas. (1872,) 941, 952.

I have gone over these authorities and many others that convince me that our Tennessee rulings on this subject are consistent with the better rulings everywhere, and that the only difficulty arises from misunderstanding or misapplying them in giving effect to the testimony in a particular case. No explicit *promise*, either verbal or written, is required, as in Wisconsin, both before and after their act requiring a written memorandum; there may be an *acknowledgment* of the debt sufficient to save the bar, but that acknowledgment must be of a character that from it a promise may be fairly and necessarily implied, and it may be proved in parol by any circumstances tending to show it, or by any writing sufficient to establish it. Partial payments, either of principal or interest, in themselves are not sufficient to establish such an acknowledgment, but, in connection with other circumstances tending to show an intention to admit a subsisting liability to pay the debt, they are as potential here as elsewhere. It is the implication from the bare payment that is prohibited to us, nothing more.

Now, I concede that if we had the Wisconsin requirement of an *explicit promise* to pay the debt, it would be difficult to find it in any of the writings relied on here, and that it is not otherwise proved. But, apart from that, the requirement of an *acknowledgment* from which a promise is necessarily implied is abundantly met by this proof. In the first place, I think no one can read the deed in the light of Williams' subsequent conduct towards these parties, and certainly when that is supplemented by his admissions in the unsigned paper and in his letter of May 28, 1877, and not conclude that, although Williams carefully provided for himself the privilege of paying the debt at the end of two years or before, it was really intended by the parties from the beginning as a permanent investment for the benefit of this trust, to run indefinitely. So, if we had nothing more than the recitals of this deed, the fact that Williams went into possession under it; that he withheld it from the record to protect beneficiaries, and was so long permitted to do so without complaint; that the interest was payable quarterly, and was in fact promptly paid *in advance* before and *after* the six years expired,—it would be a necessary implication from these payments, under the circumstances, that having so acknowledged a subsisting liability after the bar, he promised to pay the debt. But add the

admissions in the unsigned document in the letter of May 28, 1877, and the letters accompanying the remittances and receipts, and the implication of a promise, from the constantly recurring payments of interest up to his death, is irresistible.  Moreover, taking the unsigned document by itself, and more particularly the letter of May 28, 1877, by itself, and either of them would, in its language, be a sufficient *acknowledgment* of the debt from which a promise to pay it would be necessarily implied.  They would be sufficient as written acknowledgments under Lord TENTERDEN's act, or that of any of the states examined, except Wisconsin, which requires an express promise; and, as *admissions* proving an acknowledgment, they are as competent and conclusive here, where we require no writing, but the same full proof.

The plea of *plene administravit* must, on the agreed statement of facts, be found in favor of the defendant, but otherwise there must be the usual judgment against him for the balance of the debt and interest.  So ordered.